NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID SADEK,<br><br>               Plaintiff,<br><br>v.<br><br>ABBA HOROVITZ,<br><br>               Defendant. | Civ. No. 10-2187 (KSH) (PS)<br><br><br><u>**OPINION**</u> |

**Katharine S. Hayden, U.S.D.J.**

    **I.**    <u>**Introduction**</u>

David Sadek ("Sadek") brought this action against Abba Horovitz ("Horovitz") alleging that Horovitz breached the parties' stockholders' agreement by failing to properly disburse profits; failing to provide documentation as to the performance of the investment fund; and refusing to disclose the company's books. [D.E. 1.] Horovitz moves to dismiss on five independent bases: (a) Sadek is barred by the doctrine of judicial estoppel because he failed to inform the Bankruptcy Court of this action; (b) Sadek lacks standing in light of his pending bankruptcy proceeding; (c) this Court lacks personal jurisdiction over Horovitz; (d) this venue is inappropriate under the doctrine of *forum non conveniens*; and (e) Sadek's claims fail as a matter of law. [D.E. 38]

1

## II. Factual Background

### A. Facts as Pleaded

Sadek entered into a stockholders' agreement dated December 2, 1998, with Horovitz and a third individual, Yakov Kruger ("Kruger"), to create AK Capital Ltd. (now known as "AK Management Ltd."), a British Virgin Islands corporation formed expressly to serve as the investment manager to YAHK Capital Ltd. (now known as "Old School Partners"), a private investment fund. [Compl. ¶ 18.][1] Sadek paid AK Management's initial startup costs of approximately $150,000 in return for a 20% stake in the company. [*Id.* ¶¶ 2, 19.] Horovitz received 55% of the shares and Kruger the remaining 25%. [*Id.* ¶ 19.] The startup funds Sadek contributed were a loan due to be repaid prior to any distribution of profits. [*Id.* ¶ 16.] Only $120,000 was repaid to Sadek. [*Id.* ¶ 66.]

AK Management generates income by receiving a management fee of .25% of Old School Partners' net asset value per quarter and through an incentive distribution of 20% of the gains obtained by Old School Partners in a particular quarter under AK Management's guidance. [*Id.* ¶¶ 2, 21.] AK Management is operated and managed exclusively by Horovitz, acting as president. [*Id.* ¶ 22.] In this role, Horovitz is required under Section 4(h) of the stockholders' agreement to keep full and faithful books of account and to permit inspection and examination of AK Management's finances by all stockholders. [*Id.* ¶ 23 (quoting Exh. A at Section 4).]

From 2000 through 2006, Sadek received quarterly profit distributions from AK Management based on his 20% ownership, in amounts ranging up to, and at times, in excess of,

---

[1] The stockholders' agreement is governed by the "internal laws of the State of New York applicable to contracts executed, delivered and to be solely performed in the State of New York." stockholders' agreement, attached to complaint as Exh. A, at Section 17(e).

$100,000 per quarter. [*Id.* ¶ 26.]² Financial statements did not accompany these checks but general audited financials, which were given to all investors, were provided once a year to Sadek during this period. [*Id.*] Sadek never received his share of the management fee (.25% of the investment fund's net asset value per quarter). [*Id.*]

In late 2006, Horovitz told Sadek that because he was not involved in the day-to-day management he would no longer get a 20% share in the profits of AK Management. [*Id.* ¶ 30.] Horovitz traveled from his home in Israel to meet with Sadek in New Jersey to persuade him to relinquish his 20% ownership in AK Management, but Sadek refused. [*Id.* ¶ 31.] In 2007 and 2008, quarterly disbursements and financial statements from Horovitz and AK Management ceased without explanation despite news reports that Horovitz and Old School Partners were successful. [*Id.* ¶¶ 32, 35, 37-39.] Sadek contacted Horovitz to ask whether there would be any disbursement for 2009. [*Id.* ¶ 41; 8/01/09 and 8/11/09 e-mails, attached as Exh. H to Compl.] Horovitz responded that there were no disbursements and ignored a follow-up email Sadek sent him. [*Id.* ¶¶ 42-43; 8/12/09 e-mail, attached as Exh. I to Compl.] On September 15, 2009, Sadek emailed Horovitz that he had hired counsel to pursue the matter. The next day, Horovitz emailed back, stating: "I have been very busy in getting to breakevn [sic] after a horrible 2008. I have no idea what you are talking about and have no idea why you hired counsel." [*Id.* ¶¶ 44-45; 9/15/09 and 9/16/09 e-mails, attached as Exhs. K and L to Compl.] On October 13, 2009 and November 9, 2009, Sadek's lawyer wrote Horovitz invoking Sadek's right as a shareholder to inspect AK Management's books. [*Id.* ¶¶ 46-47; 10/13/09 and 11/09/09 e-mails, attached as Exhs. M & N to

---

² Around June 12, 2000, Sadek learned Horovitz had unilaterally changed the name of AK Capital Ltd. to AK Management Ltd., and moved AK Management from the British Virgin Islands to the Isle of Man. Around September 15, 2005, Sadek learned Horovitz had changed the name of YAHK Capital Ltd. to Old School Partners Fund, Ltd. Horovitz assured Sadek that his "20% shareholding remain[ed] intact and [was] not in any way affected." [Compl. ¶¶ 27-29 (citing June 12, 2000 and Sept. 15, 2005 letters, attached as Exhs. C & D to Compl.).]

Compl.]  On November 10, 2009, Horovitz emailed back, "David Sadek and I have no relationship and I have no idea what he is talking about." [*Id.* ¶ 48; 11/10/09 e-mail, attached as Exh. O to Compl.]

Sadek's first count demands an accounting of AK Management's financial records, books of account, minute books, stock transfer books, and all other books of record. [*Id.* ¶¶ 50-56.] Sadek's second and third counts (breach of fiduciary duty and breach of contract) seek money damages for Horovitz's failure to disburse profits and refusal to permit inspection and examination of AK Management's books. [*Id.* ¶¶ 57-68.]

### B. Facts Relating to Jurisdiction

These facts are derived from the complaint and Horovitz's sworn affidavit submitted in support of his motion.  Sadek did not file an affidavit.

Sadek is a citizen of New Jersey and Horovitz is a citizen of Israel. [Compl. ¶¶ 8-9.] Sadek alleges that jurisdiction is founded upon diversity of citizenship and venue in this action is proper in the District of New Jersey because "the claim arose in this district and defendants[3] are aliens." [*Id.* ¶¶ 12-13.]

Sadek and Horovitz negotiated the stockholders' agreement in Bergen County New Jersey in 1998. [*Id.* ¶¶ 15, 17.] Shortly after -- in September 1998 -- Horovitz left the United States and, after a short visit to Australia, he established residence in Israel in November 1998. [Horovitz Aff. at ¶ 2.]

The stockholders' agreement and a subscription agreement for future investors in the investment fund, Old School Partners Fund (f/k/a YAHK Capital Ltd.), were drafted by a lawyer

---

[3] On January 24, 2012, AK Management and Old School Partners were terminated as defendants. *See* D.E. 16 (Order reopening case only as to Horovitz).

4

in Israel and executed in March, 1999.[4] [Horovitz Aff. at ¶ 6.] Horovitz and Kruger signed the stockholders' agreement in Israel, where they both lived at the time and still live today. [*Id.* ¶ 8.]

Sadek alleges that Horovitz has many business connections with New Jersey and has solicited investments from residents of both New Jersey and New York through the investment fund. [Compl. ¶ 14.] In his affidavit, Horovitz states that he has had practically no contact with Sadek and New Jersey since he moved to Israel approximately 15 years ago. [Horovitz Aff. ¶ 21.] To the best of Horovitz's recollection, he met with Sadek once in New Jersey, once in New York, and once in Israel. [*Id.*] Horovitz states that with the exception of Sadek, there were never any other investors in Old School Partners from New Jersey and he does not recall ever soliciting investors from New Jersey for the fund. [*Id.*]

### C. Facts Related to Sadek's Bankruptcy Action

On September 12, 2011, Sadek filed a Chapter 7 Petition in the United States Bankruptcy Court for the District of New Jersey. *In re David Sadek*, No. 11-36743 (Bankr. Ct. D.N.J. 2011) [Bankr. D.E. 1.] The following day, Nicholas J. Delzotti was appointed as trustee. [Bankr. D.E. 3; Sadek Opp. Br. at 8.] On September 26, 2011, Sadek filed several forms in connection with his bankruptcy, including "Schedule B-Personal Property" and "Statement of Financial Affairs." [Bankr. D.E. 14, 15.] These forms identify Sadek's interest in AK Management and Old School Partners but do not mention his claims against Horovitz. *See, e.g.*, Statement of Financial Affairs, Item No. 4 (when asked to list all suits and administrative proceedings to which he is or was a party within one year immediately preceding the filing of his bankruptcy case, Sadek lists six lawsuits but omits this action); Schedule B, Personal Property, Item Nos. 13-14 (when asked to list his interest in partnerships or businesses, Sadek lists "AK Management Ltd. and Old

---

[4] Although the stockholders' agreement was dated "as of December 2, 1998," it was not finalized and executed until several months later, in approximately March, 1999. [Horovitz Aff. ¶ 7.]

School Partners"). Sadek did not change his bankruptcy forms to include this action until October 5, 2012. [Bankr. D.E. 131, 132.]

On July 16, 2012, the trustee filed a motion to dismiss Sadek's bankruptcy case for cause in accordance with 11 U.S.C. § 707(a), or, in the alternative, to extend the time to file a motion to dismiss under 11 U.S.C. § 707(b)[5] or to object to the discharge under 11 U.S.C. § 727.[6] [Bankr. D.E. 119.] Sadek opposed the trustee's motion. [Bankr. D.E. 128.] On September 4, 2012, the Bankruptcy Court denied the trustee's motion to dismiss for cause but granted his motion to extend the time to move to dismiss under Section 707(b) or to object to the discharge of debt under Section 727. [Bankr. D.E. 129.] The Bankruptcy Court has since extended the trustee's time to file his motion to dismiss or to object to the discharge of debt. [Bankr. D.E. 136, 147, 152.] The matter is still pending in the Bankruptcy Court.

## III. Procedural History

Sadek filed this lawsuit on April 30, 2010. After a significant period of time-- during which Magistrate Judge Patty Shwartz entered orders facilitating service on Horowitz in Israel, default was entered and the case dismissed without prejudice and then reopened-- the law firm of McElroy Deutsch entered an appearance on February 17, 2012, and accepted service on behalf of Horovitz, specifically stating that it reserved all jurisdictional defenses. [D.E. 18.] Counsel for both sides filed a stipulation whereby Sadek's motion for default judgment was withdrawn,

---

[5] Under Section 707(a), a case may be dismissed "for cause" if the debtor fails to satisfy a technical or procedural requirement. Here, the trustee alleged Sadek failed to respond to a subpoena that was served by the trustee on December 16, 2011. Section 707(b) provides an alternate basis for dismissal that calls for a subjective inquiry into the facts and circumstances of the case to determine whether the debtor filed in bad faith.

[6] 11 U.S.C. § 727(a)(2) and (c) allow a trustee to object to the discharge of debt when the debtor has hindered, delayed, or defrauded a creditor or an officer of the estate charged with custody of the property.

6

counsel for Horovitz accepted service on behalf of its client and was given 45 days to answer, move or otherwise respond to the complaint (*i.e.,* until April 13, 2012). [D.E. 20, 22.]

On April 3, 2012 and May 8, 2012, counsel filed further stipulations that they intended to engage in settlement discussions and agreed to extend the time for Horovitz to answer, move or otherwise respond to the complaint first through May 14, 2012 and then through June 14, 2012. [D.E. 26-29.] Horovitz sought leave to file a motion to dismiss by letters dated May 30, 2012 and June 4, 2012. [D.E. 30, 32.] During a telephone conference with Judge Shwartz held on June 7, 2012, Horovitz's attorney indicated that he believed Sadek lacked standing to pursue this action because he filed for bankruptcy in 2011 and therefore only the trustee who was appointed in the bankruptcy case could pursue the claims asserted. [D.E. 36 ("06/07/12 Transcript") at 4:6-14.] Sadek's attorney told Judge Shwartz that the bankruptcy filing was "news to [him]," that he was not "advised by [his] client," and that "this was the first [he was] learning of it." [*Id.* 4:15-6:19.] Following the telephone conference, Judge Shwartz issued an order allowing Horovitz until July 6, 2012 to answer, move or otherwise respond. [D.E. 34.]

On June 13, 2012, Horovitz provided Sadek with a copy of an affidavit that serves as the factual record in support of this motion. Sadek's attorney indicated to Judge Shwartz that he did not require any additional discovery for purposes of opposing the motion. [D.E. 37 ("06/14/12 Transcript") at 7:25-8:14.] Briefs were submitted by both parties and this Court held oral argument on March 13, 2013. [D.E. 68.]

**IV.     Discussion & Analysis**

The Court will address the issues in the order they were argued.

### A. Judicial Estoppel

Judicial estoppel is an equitable doctrine that may be applied to prohibit a party from taking a position or asserting a claim in a legal proceeding that is contrary to, or inconsistent with, a claim or position taken by that party in a previous proceeding. *Detz v. Greiner Indus., Inc.*, 346 F.3d 109, 115-16 (3d Cir. 2003). The Third Circuit imposes three requirements:

1. the party to be estopped must have taken two positions that are irreconcilably inconsistent,

2. the party changed his or her position "in bad faith-i.e., with intent to play fast and loose with the court," and

3. judicial estoppel must be "tailored to address the harm identified" and no lesser sanction will adequately remedy the damage done by the litigant's misconduct.

*See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.,* 337 F.3d 314, 319-20 (3d Cir. 2003) (quoting *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779-80 (3d Cir. 2001)); *see also In re Price*, 361 B.R. 68, 78 (Bankr. D.N.J. 2007) (refusing to apply estoppel where no evidence of bad faith). The mere failure to disclose a fact may not be deemed evidence of bad faith. *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir. 1996).

In bankruptcy, "[t]he debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceeding." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 780 (9th Cir. 2001).

Horovitz argues that the doctrine of judicial estoppel bars this action because Sadek continuously failed to inform the Bankruptcy Court of this action. [Horovitz Moving Br. at 19.]

Horovitz alleges Sadek is playing games with the Court by ignoring his duty to disclose this case "in an apparent attempt to get the protections of his bankruptcy court proceeding with regard to his debts and, at the very same time, not be subject to the obligations of the bankruptcy court proceeding with regard to the claims in this action." [*Id.* (citing *Hamilton*, 270 F.3d at 784).]

Sadek maintains that he did disclose the corporate names of the defendants in this action and that only Horovitz appeared to have been erroneously omitted. [Sadek Opp. Br. at 7 (citing *In re David Sadek*, No. 11-36743 (Bankr. Ct. D.N.J. 2011), Bankr. D.E. 14 at 6, 38-1 at 2-3).] Sadek also points to the fact that at the 341 Meeting on December 7, 2011, his attorney made clear that subsequent amendments still needed to be made to the schedules. [*Id.*] Therefore, Sadek claims there was simply no bad faith in his failure to mention this action directly on his schedules, "[r]ather, it was a mere good faith, albeit careless, mistake." [*Id.* at 8.]

But the documents Sadek cites merely state that he has an "interest" in the partnership of "AK Management, Ltd." and "Old School Partners" – not that he has a lawsuit pending against those entities. In addition, Sadek's failure to list this action on his Bankruptcy schedules for over a year – despite listing six other suits – belies his claim that it was a good faith omission.

### B. Standing When Bankruptcy Pending

Horovitz claims that Sadek lacks standing because as of the date he filed his bankruptcy action, September 12, 2011, his claims belonged to the trustee. [Horovitz Moving Br. at 20-21 (citing *Stelter v. U.S. Bank*, No. 10-3764, 2010 WL 5153046, *2 (D. Minn. Dec. 13, 2010) (where court dismissed debtor's prepetition action, finding that the "claim belong[ed] to the bankruptcy estate[,]" and accordingly, "the bankruptcy trustee is the only one with standing to bring such claim.").]

Pursuant to 11 U.S.C. § 323, as the representative of the estate the trustee is the one to administer the property of the debtor, including the debtor's prepetition causes of action. *See In re Gulph Woods Corp.*, 116 B.R. 423, 428 (Bankr. E.D. Pa. 1990) ("once a trustee is appointed in a bankruptcy case, the trustee, not the debtor or the debtor's principal, has the capacity to represent the estate and to sue and be sued."); *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 795 (D.C. Cir. 2010) (citing 11 U.S.C. § 541(a)(1) and § 323) (finding that the commencement of a Chapter 7 bankruptcy extinguishes the debtor's legal rights in pending litigation, and transfers those rights to the trustee); *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004) ("a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it"). "The trustee is granted complete authority and discretion with respect to the prosecution and defense of any litigation of the Debtor's estate." *In re Gulph Woods Corp.*, 116 B.R. at 428 (citing 2 COLLIER ON BANKRUPTCY, ¶ 323.02[3], at 323–7 (15th ed. 1989)).

Sadek claims there are exceptions to this rule. One such exception allows the debtor to participate after the trustee provides notice and a hearing is conducted allowing the trustee to abandon the property of the estate (the cause of action). To this end, Sadek alleges Horovitz's motion is premature because the trustee has not decided whether he should pursue or abandon the claim. [Sadek Opp. Br. at 9.][7]

In June 2012, Sadek's attorney, Justin Walker, told Judge Shwartz that the trustee "may want a little bit of additional time to review this to do their due diligence in determining if this

---

[7] In his brief, Sadek alludes to another exception under which a debtor may participate in litigation if it will generate a surplus in the estate. [Sadek Opp. Br. at 9 (citing *In re Silverman*, 10 B.R. 734, 735 (Bankr. S.D.N.Y. 1981), *aff'd*, 37 B.R. 200 (S.D.N.Y. 1982)).] Sadek then notes, however, that given the amount of debt he has accrued, it is unlikely that this action by itself would have the ability, if successful, to generate a surplus in his estate. [*Id.* at 10.]

[lawsuit] is something they – they want to put their fingers into."   [06/14/12 Transcript at 3:9-19.]  In addition, the trustee's attorney, John Newman, stated:

> Essentially, you know, with the bankruptcy trustee, we were trying to figure out whether or not there is an asset here to pursue, what it's going to cost the estate, and the likelihood of being able to, if there is success on the merit, of being able to collect on that debt. Right now, the bankruptcy estate has very little money to pursue a claim, so we'd have to work something out with counsel to -- to figure out that end of it, so we're -- we're -- kind of need a little bit of time, not much time, to investigate a little bit further of the potential of this case for the bankruptcy estate.

[*Id.* at 3:21-4:6.]

To date, there has been no indication from the trustee that he has abandoned this claim to Sadek. *See* 11 U.S.C. § 554(a) ("After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."); Local Bankruptcy Rule 6007-1 ("A trustee or debtor in possession seeking approval to abandon property of the estate shall file Local Form, Notice of Proposed Abandonment.  The clerk shall send notice in accordance with Fed. R. Bankr. P. 6007 of the proposed abandonment.")

The weight of authority and the record support Horovitz on this issue.  This Court is satisfied that Sadek's claims here belong to the bankruptcy trustee as property of the estate and the trustee has not abandoned them to Sadek.  11 U.S.C. § 541(a)(1); 11 U.S.C. § 323.  *See Stelter v. U.S. Bank*, *supra,* 2010 WL 5133046, *2 (cited by Horovitz) (dismissing debtor's pre-petition suit for lack of subject matter jurisdiction after finding bankruptcy trustee was the only one with standing to bring such a claim and noting that he had not abandoned that right).

### C. Personal Jurisdiction

Fed. R. Civ. P. 12(b)(2) authorizes a motion to dismiss for lack of personal jurisdiction over the defendant. Once a defendant challenges personal jurisdiction, the plaintiff bears the ultimate burden of establishing, by a preponderance of the evidence, facts sufficient to support the exercise of personal jurisdiction. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). To meet this burden, the plaintiff may not rely on bare pleadings alone, but must come forward with affidavits and other competent evidence establishing with reasonable particularity the nature and extent of defendant's contacts with the forum state. *Id.* "If the plaintiff meets this burden, the defendant may attempt to show that considerations of fair play and substantial justice render the exercise of personal jurisdiction unreasonable." *N.J. Federal Civil Procedure,* § 2-3:3.2, at 69 (2011) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Applying the familiar analysis under Fed. R. Civ. P. 4(e),[8] Sadek claims the Court has specific jurisdiction over Horovitz. [Sadek Opp. Br. at 11.] Relying solely on his complaint, he

---

[8] Fed. R. Civ. P. 4(e) provides that "district courts have personal jurisdiction over nonresident defendants to the extent authorized under the law of the forum state in which the district court sits." The New Jersey long-arm rule invokes the "minimum contacts" test. N.J. Ct. R. 4:4-4(c). A court can exercise general jurisdiction over the defendant where the cause of action "does not arise out of to the defendant's contacts with the forum State, but the defendant has "continuous and systematic" contacts with the forum state. *IMO Industries, Inc. v. Kiekert AG,* 155 F.3d 254, 259 n. 2 (3d Cir. 1998). Alternatively, a court can exercise specific jurisdiction when the defendant has limited contacts with the forum state but the suit arises out of or relates to those contacts. *Stonehill v. Hawley*, No. 07-1815, 2008 WL 163698, at *2 (D.N.J. Jan. 14, 2008) (Pisano, J.). In order for specific jurisdiction to be properly exercised, the plaintiff must satisfy a two-part test: (1) "the plaintiff must show that the defendant has constitutionally sufficient 'minimum contacts' with the forum," and (2) "for jurisdiction to be exercised the court must determine, in its discretion, 'that to do so would comport with 'traditional notions of fair play and substantial justice.'" *Kiekert*, 155 F.3d at 259. In other words, a court must consider whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted).

argues that Horovitz established "minimum contacts" in New Jersey by soliciting investments from residents and by negotiating the agreement with him in Bergen County. [*Id.* (citing Compl. ¶ 4).] Sadek contends that jurisdiction in New Jersey comports with traditional notions of fair play because New Jersey has an interest in protecting its citizens' rights and because the burden on Horovitz is not substantial. [*Id.* at 5.] In response, Horovitz notes that "with the exception of an initial conversation that took place in New Jersey . . . and Sadek purportedly signing the contract months later in New Jersey, there is no connection to New Jersey." [Horovitz Moving Br. at 24; Horovitz Aff. ¶ 21.][9] The stockholders' agreement was drafted in Israel and signed by Horovitz and Kruger in Israel. [*Id.* (citing Horovitz Aff. at ¶¶ 6, 8).] In addition, the stockholders' agreement sets forth the rights and obligations of the parties (two of whom live in Israel) with regard to a corporation that was initially organized under the laws of the British Virgin Islands. [*Id.* at 24-25 (citing stockholders' agreement at 1).] The agreement also states that it is to be governed by the internal laws of the State of New York. [*Id.* at 25; stockholders' agreement at § 17(e).] Horovitz concludes that at most, Sadek can contend he received payments pursuant to the agreement in New Jersey, but that does not confer jurisdiction because they were made from the corporation and handled by Kruger. [*Id.* (citing *Stevens v. Welch*, No. 10-3928, 2011 WL 541808, at *5 (D.N.J. Feb. 7, 2011) (Wigenton, J.).]

Sadek has not demonstrated that the nature of Horovitz's contacts with New Jersey are such that he "reasonably anticipate[d] being haled into court" here. *World-Wide*, 444 U.S. at 297. He had the burden to adduce jurisdictional facts. As noted in *Credle v. U.S.*, "[p]laintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits and

---

[9] Horovitz also argues that this Court does not have general jurisdiction over him because since moving to Israel in 1998, he has had practically no contact with New Jersey (*i.e.*, his contact cannot be deemed "continuous," "systematic," or "substantial"). [Horovitz Moving Br. at 23.]

competent evidence. . . . At no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." No. 11-1667, 2011 WL 6304027, at *1 (D.N.J. Dec. 14, 2011) (Irenas, J.) (internal quotations omitted) Moreover, considering the burden (hardship) on the defendant (a citizen of Israel), the location of most of the witnesses (Israel), and the forum state's lack of interest in adjudicating the claim – evident from the NY choice of law provision[10] - jurisdiction in New Jersey would not comport with fair play and substantial justice.

### D. *Forum Non Conveniens*

Similar considerations are involved in Horovitz's arguments that the doctrine of *forum non conveniens* ("FNC") applies and that Israel, not New Jersey, is the appropriate forum. The doctrine of FNC "gives courts the discretion to decline exercising jurisdiction over certain cases where the underlying principles of justice and convenience favor dismissal." *Windt v. Qwest Commc'ns Int'l, Inc.*, 544 F. Supp. 2d 409, 415 (D.N.J.), *aff'd* 529 F.3d 183 (3d Cir. 2008). The Third Circuit has directed courts to address: (1) the availability of an adequate alternate forum; (2) the appropriate level of deference due to the plaintiff's choice of forum; and (3) the relevant private and public interest factors. *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189-90 (3d Cir. 2008); *Technology Dev. Co. v. Onischenko*, 174 F. App'x 117, 119-20 (3d Cir. 2006). The burden on a defendant moving to dismiss on FNC grounds is a heavy one. *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).

Horovitz is amenable to process in Israel and maintains that Israel has more interest in resolving this dispute because it pertains to an Israeli citizen's alleged breach of an agreement

---

[10] *See Burger King*, 471 U.S. at 482 (choice of law provision is relevant in determining whether party to contract purposely invoked the benefits and protections of the forum's laws).

that was executed in Israel. [Horovitz Moving Br. 27.] In addition, the contract at issue was drafted by an Israeli lawyer and signed by two of the signatories – Horovitz and Kruger – in Israel, where they all reside. [*Id.*]

In opposition, Sadek cites the "strong presumption in favor of retaining jurisdiction where the plaintiff is a resident who has chosen his home forum." [Sadek Opp. Br. at 14-15 (quoting *Kurzke v. Nissan*, 164 N.J. 159, 171 (2000)).] Sadek claims he is not "harassing" or "oppressing" Horovitz by choosing New Jersey and notes that if venued in New Jersey, "[t]here would be no conflict with other courts needing to unravel New Jersey or another state's laws." [*Id.* at 14-15.]

The stockholders' agreement is governed by the "internal laws of the State of New York," Horovitz is amendable to process in Israel, most witnesses and parties are in Israel, and Horovitz's purported breaches occurred in Israel. *See, e.g., Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 162-63 (3d Cir. 2010). Despite Sadek's choice of forum, the Court is not satisfied that New Jersey has sufficient interest in the matter to overcome the burdens on Horovitz and availability of an adequate alternative forum.

V.  **Conclusion**

While both sides also briefed and argued for and against dismissal under Fed. R. Civ. P. 8(a)(2), their arguments need not be addressed.  Per the analysis in sections IV (C) and (D) above, the Court is satisfied that dismissal is warranted under Fed. R. Civ. P. 12(b)(2) and the doctrine of FNC.  Having so found, the Court need not rule on the effect of Sadek's failure to list this lawsuit in his bankruptcy filings.  The Court notes, however, that his explanations fall short and the weight of authority support Horovitz's argument that Sadek's claims belong to the bankruptcy trustee.

Horovitz's motion to dismiss [D.E. 38] is **granted**.  An appropriate order will be entered.

Date:  March 28, 2013

/s/ Katharine S. Hayden  
Katharine S. Hayden, U.S.D.J.

16